*WENDY J. OLSON, IDAHO BAR No. 7634*
*UNITED STATES ATTORNEY*
*GEORGE W. BREITSAMETER, IDAHO BAR No. 2871*
*ASSISTANT UNITED STATES ATTORNEY*
*KENNETH M. ROBINS*
*SPECIAL ASSISTANT UNITED STATES ATTORNEY*
*DISTRICT OF IDAHO*
*WASHINGTON GROUP PLAZA IV, SUITE 600*
*800 EAST PARK BOULEVARD*
*BOISE, IDAHO  83712*
*TELEPHONE:  (208) 334-1211*
*FACSIMILE:  (208) 334-1038*

*UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO*

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | )    CR No. 09-286-S-EJL |
| Plaintiff, | ) |
| | )    GOVERNMENT'S SENTENCING |
| vs. | )    MEMORANDUM |
| | ) |
| MICHAEL J. HYMAS and | ) |
| SHAUNTEE K. FERGUSON, | ) |
| | ) |
| Defendants. | ) |
| | ) |

The United States of America and Wendy J. Olson, United States Attorney for the

District of Idaho, George W. Breitsameter, Assistant United States Attorney, and Kenneth M.

Robins, Special Assistant United States Attorney for said District, file this sentencing

memorandum.  Sentencing is scheduled for Monday, November 1, 2010, at 10:30 a.m on

Michael Hymas and 2:00 pm on Shauntee Ferguson.

Pursuant to the terms of the plea agreement, the Government recommends the Court

impose sentence on Michael Hymas at an offense level eighteen (18) and a criminal history

category of I, which yields a sentencing guidelines range of 27-33 months.

It is recommended on Shauntee Ferguson that the Court impose sentence at an offense

level of twelve (12) and a criminal history category of I, which yields a sentencing guideline

range of 10-16 months.

The Government further requests that the Court impose a sentence within the sentencing

guidelines range, followed by three years of supervised release with the conditions recommended

by U. S. Probation.

As for restitution, the government agreed to recommend that the Court order restitution

for one-third of the total loss amount.  The pre-sentence investigation report, hereinafter referred

to as the "PIR," calculated the total amount of restitution on the counts related to Michael Hymas

as $1,633,941[1].  Accordingly, the Government seeks a restitution order on Michael Hymas of

$544,647.  The PIR calculated the total amount of restitution owed by Shauntee Ferguson as

$1,097,489.  Restitution on Shauntee Ferguson is sought in the amount of $ 365,829.69.

## I.      STATEMENT OF FACTS

On December 9, 2009, the defendants, Michael Hymas and Shauntee Ferguson, were

indicted on twenty-one (21) counts: four counts of bank fraud and seventeen counts of wire

---

[1]  The PIR calculated the loss amount as $1,663,941.  However, the correct amount is
$1,633.941.

fraud.  Before the Indictment, co-defendant Stanley Ferguson entered into a plea agreement.  He pled guilty to wire fraud and is scheduled for sentencing on November 29, 2010.

The December Indictment alleged that Michael Hymas and Stanley and Shauntee Ferguson were partners in a residential loan fraud scheme.  Between 2004 and 2006 Stanley and Shauntee Ferguson obtained twenty-one loans under fraudulent circumstances in relation to residential properties in Idaho and Utah.  The total value of the fraudulent loans was approximately $7.5 million dollars.

Their primary intent was to acquire residential property and "flip it," or sell it, so they could realize a profit from the sale.  This scheme was particularly attractive given the appreciation that was occurring in the real estate market.  Furthermore, the scheme could be accomplished with little or no financial risk, since the scheme was financed entirely through fraudulent residential loans.

In some circumstances, they obtained financing to construct residential property while, in other instances, they purchased existing residential properties that they intended to improve and sell for a profit.

They were successful in realizing profits on a couple properties, but the fraudulent loan scheme collapsed when they were unable to make payments on the mounting loan obligations.  In May 2008, Stanley and Shauntee Ferguson filed a petition in bankruptcy in United States Bankruptcy Court for the District of Idaho.  They attempted to discharge over $8 million in secured debt owed to various residential lenders.  (See Case Number 08-6085-TLM.)

They appeared for an initial meeting of creditors on June 27, 2008, and July 11, 2008, and later for a 2004 examination on August 14, 2008.

During these examinations in the bankruptcy proceeding, Stanley and Shauntee Ferguson admitted to purchasing residential properties for investment purposes so they could "flip" the real estate and realize a profit.  They admitted to purchasing over thirteen (13) residential properties – some valued in excess of $1 million.  They also admitted to submitting false information in order to obtain financing to purchase the property.

Shauntee Ferguson admitted she was not employed at an insurance agency, as represented on loan applications.  In fact, loan documentation routinely misrepresented she was employed as the "Marketing Director" at an insurance agency.  The insurance agency was owned by her father, the defendant, Michael Hymas.  The loan applications further misrepresented that, as the marketing director, Shauntee Ferguson earned a substantial amount of monthly income.

During the 2004 exam Stanley and Shauntee Ferguson admitted to other false representations on the loan applications, including the value of their interest in real estate, the receipt of rental income, interest in a bank account, and the value of various personal property.  Of note, during the lengthy 2004 examination in the bankruptcy proceeding, Michael Hymas was never referenced by Stanley and Shauntee Ferguson.  It was not until an investigation by the Federal Bureau of Investigation, hereinafter referred to as the "FBI," that Michael Hymas' role as a silent partner in the loan fraud scheme was established.

As a result of the testimony during these proceedings, the matter was referred by the United States Trustee's Office to the FBI.  An investigation had previously been initiated based upon criminal referrals from mortgage lenders and financial institutions.

Loan documentation substantiated that Stanley J. Ferguson and Shauntee K. Ferguson obtained approximately twenty-two (22) false and fraudulent residential loans with an approximate value of $8 million dollars.

On August 13, 2009, Stanley J. Ferguson was interviewed by the FBI.  He was represented by legal counsel.  During the interview he once again admitted he falsified residential loan applications.  He also stated that his father-in-law, the defendant, Michael Hymas, was a partner in the loan fraud scheme.  Since Michael Hymas filed bankruptcy in 2004, he claimed that he was unable to obtain financing.  Therefore, financing could only be obtained, individually or jointly, by Stanley J. Ferguson and Shauntee K. Ferguson.

In December 2009, Stanley J. Ferguson executed a plea agreement and agreed to plead guilty and cooperate in the investigation.  On December 8, 2009, he testified before the Grand Jury.  He described the events that led to the loan fraud scheme and ultimately to the May 2008 bankruptcy proceeding.

In July 2004, Michael Hymas approached Stan Ferguson about obtaining financing for a family cabin in Island Park, since he could not obtain financing in his name.  Michael Hymas worked with the loan broker to obtain the financing to purchase the cabin.  Although the loan was in the name of Stanley and Shauntee Ferguson, all payments were made by Michael Hymas.

In November 2004, Michael Hymas and Stanley and Shauntee Ferguson started to purchase properties for investment purposes.  The first two properties were located in a subdivision in Boise.  According to Stan Ferguson, Michael Hymas again worked with loan brokers to arrange the financing.  One of the loans was put in the name of Shauntee Ferguson, while the other loan was put in Stan Ferguson's name.  (Michael Hymas pled guilty to his role in obtaining the November 2004 fraudulent $337,250 Shauntee Ferguson loan – see pages 3 and 4 of Michael Hymas' plea agreement).  This loan is discussed in more detail below and is representative of the fraud that occurred on all loans in question.

In order for Shauntee Ferguson to obtain the $337,250 loan, she needed to be employed. Michael Hymas approached an employee at his insurance agency and requested that she falsely represent to the lender that his daughter, Shauntee Ferguson, was employed at the agency as its Marketing Manager.  He also instructed that she falsely represent to lenders that Shauntee Ferguson had been so employed for the last three years.

Hymas then misrepresented on the loan application that Shauntee Ferguson earned approximately $9,000 per month as the Marketing Manager.  Shauntee Ferguson signed the false loan application in four (4) locations, including above a warning that advised her of the criminal penalties that apply to giving false information on loan applications.  The loan application generated by Michael Hymas and signed by Shauntee Ferguson contained other falsities addressed below.  Again. these falsities are representative of the fraud that occurred on all of the loans in question.

During the next two year period -- between 2004 and 2006 – Michael Hymas continued to instruct his employee at the insurance agency to misrepresent to lenders that Shauntee Ferguson was an employee of the agency.  However, the family relationship was not disclosed.  Other employees at the insurance agency were instructed to direct calls from lenders to the particular employee tasked with lying to the lenders.

In certain instances, the employee was instructed to falsely represent her income to the lenders.  When she asked Michael Hymas about simply putting Shauntee Ferguson on the payroll, he claimed it would be too costly.  During the period of the loan fraud scheme Michael Hymas and Shauntee Ferguson apologized to the employee for putting her in this position.

Michael Hymas also put Stanley and Shauntee Ferguson's name on a bank account which was misrepresented on the loan application as their personal assets.  The asset falsely appeared to

be funds at their disposal to pay the loan obligation.  However, the funds were managed by

Michael Hymas.  Shauntee Ferguson misrepresented the bank account balance as her asset at the

loan closing.  The closing agents review the representations as to a person's assets in some detail

before the loan is funded.

Michael Hymas also arranged for his wife's name to be put on a false and fraudulent

rental agreement which gave the appearance that she was paying rent to Stan Ferguson in the

amount of $2,500 per month.  Stan Ferguson signed the fraudulent rental "as the landlord."  The

fraudulent rental income was reported on the loan application for the $337,250 loan, and signed

by Shauntee Ferguson.  Other fraudulent rental agreements were submitted by the defendants to

other lenders on other loans.

Another falsity that was attested to by Shauntee Ferguson on the $337,250 loan -- and

later by both Stanley and Shauntee Ferguson on other loans -- was their intent to occupy the

property.  As they admitted during the 2004 exam, with the exception of two properties -- 1915

West Sugar Crest and 2881 West Sugar Crest Drive – it was their intent to "flip" or sell the

properties.  Despite what they represented on some of the loan applications, they did not intend to

reside in the property.  Instead, they purchased the property for "investment purposes."

The representation that the borrower intends to occupy the residence as their personal

residence is material to the lender because the default rate on personal residential loans is lower

than loans issued for investment properties.  Borrowers are less likely to go into foreclosure on

their personal residence.  Accordingly, underwriting guidelines for such loans are different and

the interest rate charged for investment loans is generally greater due to the higher risk.

In order to ensure borrowers are truthful when they represent on the loan application their

intent to reside in the property, the borrower is required to execute a separate Affidavit of

Occupancy.  In this document, the borrower attests as to their intent to occupy the property.  At the loan closing, agents review the affidavits with borrowers to ensure they understand the significance of signing the affidavit and the consequences when lying about it.  In some instances, above the signature line the borrower is warned "it is a federal crime punishable by fine or imprisonment, or both, to knowing make any false statement concerning the loan application."

Both Stanley and Shauntee Ferguson falsely represented on a number of the loans in question their intent to occupy the residential property.

Stanley and Shauntee Ferguson did intend to occupy one of the residences obtained through fraudulent loans proceeds.  This was a $1.5 million home located at 1915 Sugar Crest in Eagle, Idaho.  It was described by one witness as the "house with a slide" because of the built-in slide that allowed one to get to lower floors in the residence by a slide rather than by taking the stairs.

In August 2006, Shauntee Ferguson executed the $1,499,999 loan application for this personal residence.  The following misrepresentations were contained on the loan application:

- She was employed as the Marketing Director at an insurance agency;

- She earned $12,000 per month, plus bonuses of $14,000 per month, for a total of $26,000 per month;

- She had a US Bank account with a balance of $146,707;

- She received rental income of $3,150 per month.

Stanley and Shauntee Ferguson resided in the house until moving out when they were unable to make the mortgage payments.  The loan went into default and they later attempted to have the debt for the fraudulent loan discharged in their personal bankruptcy proceeding.

Michael Hymas also used fraudulent loan proceeds to purchase a personal $1.5 million dollar residence.  In July 2005, Stanley Ferguson obtained a loan for $1,045,450 to purchase the Eagle, Idaho, residence.  (The loan was not the subject of any criminal charges because of lack of sufficient documentation when the Indictment was returned.)  The loan application was false in various ways, including a misrepresentation that Stanley Ferguson earned $16,245 per month.

Michael Hymas and Stan Ferguson used this same residence to obtain a home equity line of credit ("HELOC").  Although a HELOC was initially denied by a lender, they then applied through a different loan broker for a HELOC with a different lender.  In November, 2005, based upon fraudulent representations, Countrywide (now Bank of America) funded a $200,000 second mortgage on the residence.

Stanley Ferguson falsely represented on the $200,000 HELOC loan application that he was earning approximately $18,000 per month.  Proceeds from the HELOC were used to do landscaping work on the property, pay off debts, and to fund investment properties.  In May 2008, Stanley Ferguson listed the debts on his bankruptcy schedule seeking discharge of the obligation.

In summary, the defendants defrauded multiple lenders on approximately $8 million in loans.  It was their intent to realize a profit from an escalating residential real estate market.  Instead, they resided in million dollar homes for a period of time.  They committed the scheme without risking any personal assets, but instead utilized the resources of financial institutions and lenders to fund the scheme.  These financial institutions and lenders were defrauded in various ways by the defendants and have incurred substantial losses as a result of the fraud.

## II.    GUIDELINES RANGE AND SENTENCING RECOMMENDATIONS

### A.    **Recommendation**

Pursuant to the terms of the plea agreement, the Government recommends the Court impose sentence on Michael Hymas at an offense level of eighteen (18) and a criminal history category of I, which yields a sentencing guidelines range of 27-33 months.

It is  recommended on Shauntee Ferguson that the Court impose sentence at an offense level of twelve (12) and a criminal history category of I, which yields a sentencing guidelines range of 10-16 months.

The Government recommends a sentence within the sentencing guidelines, followed by three years of supervised release with all the conditions recommended by U. S. Probation.  This is a sentence that reflects not only the seriousness of the offense described in the Indictment and the Plea Agreement, but also the Defendant's overall conduct as set forth in the PIR.

Following the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), the Court is required to consider the sentencing range calculated under the United States Sentencing Guidelines, together with the other factors set forth in Title 18, United States Code, Section 3553(a), including:  (1) the nature and circumstances of the offenses; (2) the history and characteristics of the Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the Defendant; (6) the need to provide the Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the

need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among Defendants involved in similar conduct who have similar records.

### 1. <u>The Nature and Circumstances of the Offense</u>

The nature and circumstances of the offense indicate a concerted effort to skillfully cheat lenders on residential loans for personal gain.

### 2. <u>Defendant's History and Characteristics</u>

The history of the defendants has been fully discussed in the PIR.

### 3. <u>The Need For the Sentence To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment.</u>

The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense will be best served by the government's recommended sentence.

### 4. <u>The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and Protect the Public From Further Crimes of the Defendant.</u>

The sentence in this case must be severe enough to deter the Defendant and others from weighing the costs of a lenient sentence versus the benefits of defrauding lenders. The government's recommended sentence will serve that goal and deter others from following their example.

### 5. <u>The Need To Provide Defendant With Educational and Vocational Training, Medical Care or Other Correctional Treatment</u>

Another factor that the Court is to consider is the need to provide the Defendants with educational and vocational training, medical care, or other correctional treatment in the most effective manner and the kinds of sentences available. The Defendants do

not have any known medical problems nor a demonstrated need for educational or vocational training.

**6.**      <u>**The Need to Provide Restitution to Victims**</u>

As for restitution, the government agreed to recommend that the Court order restitution for one-third of the total loss amount. The pre-sentence investigation report, hereinafter referred to as the "PIR," calculated the total amount of restitution on the counts related to Michael Hymas as $1,663,941. Accordingly, the Government seeks a restitution order on Michael Hymas of $544,647. The PIR calculated the total amount of restitution owed by Shauntee Ferguson as $ 1,097,489. Restitution on Shauntee Ferguson is sought in the amount of $365,829.69.

**7.**      <u>**The Need to Avoid Unwarranted Sentence Disparity Among Defendants Involved in Similar Conduct Who Have Similar Records**</u>

The final factor for the Court to consider is the need to avoid unwarranted sentence disparity among Defendants involved in similar conduct who have similar records. In this case, the Sentencing Guidelines calculation includes specific offense level adjustments for virtually all of the aspects of Defendant's conduct, and none of the factors in Section 3553(a) suggest that a sentence outside that range would be appropriate.

Finally, the Government respectfully requests that the Court review the recent dissent by Judge Gould in <u>United States v. Edwards</u>, a copy of which is attached hereto as Exhibit A.

**III.     CONCLUSION**

For the foregoing reasons, the Government respectfully requests that this Honorable

Court impose a sentence with the sentencing guidelines, as set forth above.

Respectfully submitted this 28th day of October, 2010.

WENDY J. OLSON
United States Attorney
By:


_____
/s/ George W. Breitsameter
Assistant United States Attorney


_____
/s/ Kenneth M. Robins
Special Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I am an employee of the United States Attorney's Office for the District of Idaho, and that a copy of the foregoing Government's Sentencing Memorandum was served on all parties named below this 28th day of October, 2010.

___ United States Mail, postage prepaid

___ Hand delivery

___ Facsimile Transmission (fax)

___ Federal Express

_x_ ECF Filing

Darren J. Meacham
Attorney at Law
211 West Main Street
Boise, Idaho 83702

Paul E. Riggins
Attorney at Law
960 Broadway Avenue, Suite 210
Boise, Idaho 83706

_____
/s/ George W. Breitsameter